UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :        07 Cr. 747 (LAP)

    - v. -        :

ABU KAMARA,        :

        Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM**

                        MICHAEL J. GARCIA
                        United States Attorney
                        Southern District of New York
                        Attorney for the United States of America

Adam S. Hickey
Assistant United States Attorney

    – Of Counsel –



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 16, 2008

**BY HAND**

The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Abu Kamara,**
                **07 Cr. 747 (LAP)**

Dear Judge Preska:

      The Government respectfully submits the following in response to the defendant's submission dated May 15, 2008, and in anticipation of the defendant's sentencing, which is presently scheduled for Wednesday, May 21, 2008.

## Legal Principles

      Because the maximum sentence of imprisonment for bank fraud is 30 years, *see* 18 U.S.C. § 1344, the defendant has been convicted of a Class B felony, *see* 18 U.S.C. § 3559(a)(2), and he is therefore statutorily precluded from a sentence of probation, *see* 18 U.S.C. § 3561(a)(1).

      The Guidelines provide that, because the defendant's sentencing range (4 to 10 months' imprisonment) falls in Zone B, he may be sentenced to "a sentence of imprisonment that includes a term of supervised release with a condition that substitutes . . . home detention [for imprisonment] *provided that at least one month is satisfied by imprisonment.*" U.S.S.G. § 5C1.1(c)(2) (emphasis added). Thus, the minimum sentence the Court could impose under the Guidelines is one month's imprisonment, to be followed by three years' supervised release, U.S.S.G. § 5D1.2(a)(1), including a special condition of three months' home detention.

      Of course, although the Guidelines still provide strong guidance to the Court in light of *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), they are no longer mandatory. But "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while

...

Hon. Loretta A. Preska
May 16, 2008
Page 2 of 4

they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594.; *see also Rita* v. *United States*, 127 S. Ct. at 2464. After making the initial Guidelines calculation, a sentencing judge must then consider seven factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in Section 3553(a)(2). *Gall* v. *United States*, 128 S. Ct. at 596-97.

Under the relevant statutory authority, the defendant could be sentenced to time served and a term of up to five years' supervised release, with whatever special conditions, and for whatever period (including home detention, *see* 18 U.S.C. §§ 3563(b)(19), 3583(d)), the Court determines is appropriate and "involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in" Section 3553(a)(2)(B)-(D). *See* 18 U.S.C. § 3583(b)(1), (d).

## Discussion

The Government contends that the minimum Guidelines sentence of one month's imprisonment, to be followed by three months' home detention, is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing in light of: (1) the fact that the defendant himself kept most of the proceeds of his crime, (2) those proceeds were not insignificant, (3) he has persisted in false statements to the contrary, (4) the defendant has not been deterred by his prior contacts with the criminal justice system, and (5) his background offers no justification for the offense.

A.     The Defendant Was the Principal of the Crime and Retained Its Proceeds

The Government contends that the defendant himself retained the majority of the proceeds of his crime, contrary to his contention that "the majority [of the funds] went to the person who actually stole the checks and gave them to Mr. Kamara to deposit." Def.'s Ltr. at 1 (May 15, 2008); *see also* Presentence Investigation Report ¶ 24 ("PSR").

The defendant's explanation of his role in the offense conduct has shifted to accommodate the evidence confronting him. Initially, he told HSBC investigators the implausible story that the first check had been signed over to him by a customer of his construction business. (PSR ¶ 23). When pressed (following a waiver of his *Miranda* rights), the defendant told agents that a male acquaintance he had not seen in 18 years, and whose full name he did not know, just happened to run into him at a restaurant and asked the defendant to cash a $7,996 U.S. Treasury check. (PSR ¶ 24). According to the defendant, this acquaintance

Hon. Loretta A. Preska
May 16, 2008
Page 3 of 4

told him he had an import/export business selling African masks, but that he didn't have a bank account, and the check was signed over to him by a customer in payment for African masks. (PSR ¶ 24). Remarkably, the individual still did not have a bank account about a month later, and had been paid for African masks with two additional Treasury checks (for $5,996 and $4,357.79), which the defendant also cashed for him. (PSR ¶ 24). And in return, the defendant himself was paid only $20 and $60 by the individual. (PSR ¶ 24).

Bank records belie this explanation (attached as Exhibit A). According to the defendant, he withdrew the proceeds of the first check (for $7,996) in two separate withdrawals of unspecified amounts, and the proceeds of the second and third checks (which were deposited simultaneously and totaled more than $10,000) in two cash withdrawals of $8,000 and $2,300. (PSR ¶ 24). The single significant cash withdrawal after the first check was in the amount of $2,050, however, and the only significant cash withdrawal after the second and third checks was in the amount of $8,000. The balance of the $18,349.79[1] that was deposited was withdrawn in much smaller amounts (most less than $100), used to make direct debit purchases with merchants, or paid by check to named parties. At a minimum, then, the defendant spent more than $8,000 of the fraud's proceeds. Given the defendant's false statements (and the facial implausibility of his explanation), however, there is no reason to draw the favorable inference that the balance of the funds were given to any "acquaintance." Instead, the Government submits that it is more likely than not that the defendant himself enjoyed the full benefit of the bank fraud — which amounted to between about 30 and 90% of his reported annual income over the last decade — and was not the hapless accomplice he has portrayed himself as. The foregoing are negative indications of the nature and circumstances of the offense and the history and characteristics of the defendant which deserve to be weighed together with the background information in defendant's submission.

Moreover, the facts that he has not admitted his role in the offense (by repeating false statements through his counsel's sentencing submission) and has refused to discuss his participation in the offense with Probation (PSR ¶ 33) counsel in favor of a custodial sentence, for they suggest he has not accepted responsibility for his conduct (because he continues to deny it).

B.  The Defendant's Criminal History

Second, the defendant's criminal history raises concerns about specific deterrence. The defendant was convicted twice previously, including less than six years ago for attempted grand larceny. On both occasions, the defendant was given non-custodial sentences. Regrettably, those contacts with the criminal justice system were insufficient to deter him from

---

[1]  The PSR miscalculates the total of the checks when it calls for $15,349.79 in restitution.

Hon. Loretta A. Preska
May 16, 2008
Page 4 of 4

criminal conduct, which has only become more serious over time, as the defendant moved from failing to disclose the origin of a recording (a copyright-related offense), to attempting grand larceny, to bank fraud.

The Government also notes that on two prior occasions in Iowa and Pennsylvania, the defendant was arrested but failed to appear for prosecution in those jurisdictions. (Tr. at 5 (Feb. 4, 2008).) While the Government does not suggest any inference of guilt should be drawn against the defendant in those cases, the fact that the defendant was twice previously ordered to appear, and twice defied such an order, goes generally to his history and characteristics and also to the ability of court orders and supervision alone (without more significant punishment) to deter future criminal conduct by the defendant.

C.  The Defendant's Background

The fact that the defendant has overcome hardship to come to the United States, where he has enjoyed some professional success (saving up enough money to start his own business, Def.'s Ltr. at 3 (May 15, 2008), is not a point in his favor. Because the defendant sought easy gains through criminal conduct more than a year after his life showed considerable signs of improvement (and he was earning a middle class wage), there is reason to believe that this crime was born of opportunity and greed, not desperation or hardship. Simply put, the defendant's crime delayed other hardworking individuals from receiving the fruits of their tax returns, which they had earned, and which they had a right to receive in a timely fashion. (It also involved a fraud on a financial institution.) That the defendant's life could continue to improve, and he would still commit crimes, suggests that good fortune alone (including yet another non-custodial sentence) will not deter him from criminal conduct.

### Conclusion

For the foregoing reasons, the Government respectfully submits that a sentence within the Guidelines range, which includes some custodial component, would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
Adam S. Hickey
Assistant United States Attorney
Tel.: (212) 637-1039

Attachment